UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARLI MARSHALL,<br><br>    Plaintiff,<br><br>      v.<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>    Defendant. | ECF Case<br><br>No. _____<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1.      Plaintiff Karli Marshall ("Marshall") worked for Defendant JetBlue Airways Corporation ("JetBlue" or "Defendant") as a flight attendant from May 22, 2019 until March 22, 2021.

2.      Marshall asserts retaliation claims pursuant to Title VII of the Civil Rights Law ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") against JetBlue.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Marshall's NYSHRL and NYCHRL claims under 28 U.S.C. § 1367.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2): a substantial part of the events giving rise to the action occurred in this District.

5.      On or about June 24, 2021, Marshall filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

6.     On April 1, 2022, the EEOC determined that "it is more likely than not that Charging Party was terminated in retaliation for having complained of race discrimination, all in violation of Title VII, as amended."

7.     On June 9, 2022, the EEOC issued Marshall a Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A.

8.     Marshall timely filed this Complaint within the 90-days of receiving the Notice of Right to Sue.

THE PARTIES

9.     Marshall was, at all relevant times, an adult, African American, female residing in Dallas, Texas, working out of Queens, New York, her "home base," while employed by JetBlue.

10.     JetBlue is a foreign business corporation organized under the laws of Delaware and licensed to do business in the state of New York, with a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101.

STATEMENT OF FACTS

11.     JetBlue is a global airline and travel company in the business of providing airline transportation and vacation services.

12.     JetBlue employed Marshall as a Flight Attendant from May 22, 2019 until March 22, 2021.

13.     On December 28, 2020, Marshall saw a post on an unofficial JetBlue Flight Attendant Facebook page that she felt was racist (the "Facebook Post").

14.     The post, made by a white, adult male, stated "no offense, but rapping shouldn't be mentioned in the same breath as music."

-2-

15.     Marshall responded to the Facebook Post on Facebook, informing the author that she felt his post contained "racist antics."

16.     On December 29, 2020, Marshall emailed Crew Relations, alerting them to the Facebook post and her feelings that the post was racist in nature. This was the accepted procedure for reporting grievances at JetBlue.

17.     Crew Relations stated that it would look into Marshall's allegations and that they would investigate and follow-up.

18.     Marshall did not receive any communications from Crew Relations until they wanted to schedule a meeting concerning alleged social media violations by Marshall herself.

19.     To Marshall's knowledge, the only action taken by JetBlue in response to her complaints about the racist Facebook Post of a colleague was to investigate her for alleged social media policy violations and, as explained below, to terminate her employment.

20.     On March 8, 2021, a meeting was held via Microsoft Teams to discuss the alleged social media violations. The meeting participants were Marshall, Stephen Orlando ("Orlando"), Inflight Supervisor, Mike Roldan ("Roldan"), Base Manager, and a Crew Relations representative.

21.     During the March 8 meeting, Marshall was informed that someone reported her for calling the Facebook Post "racist," and that the author of the post was offended by her comments.

22.     Marshall then informed JetBlue that, as an African American female she was deeply offended by the Facebook post, that she was not the only person offended,

-3-

and that she felt a responsibility to call out the racist post. Marshall also informed JetBlue that she would continue to speak out on posts that she feels are racist, largely because when posts are reported to JetBlue no action is taken.

23. At the conclusion of the discussion concerning the Facebook post for which the meeting was scheduled, Orlando unexpectedly brought up a "no-show" incident involving Marshall that occurred on January 29, 2021.

24. The January 29 incident occurred when Plaintiff did not arrive at her home base within the required amount of time, as her flight to New York had been delayed.

25. The no-show incident was fully investigated and resolved in January and was recoded from a no-show to an "unavailable to report," or UNR, with Marshall having received email correspondence from Heather Monaghan ("Monaghan"), Inflight Supervisor, and Andrew Ligonde ("Ligonde"), Inflight Supervisor, confirming the recode.

26. The recode resulted in a less severe infraction, given that Plaintiff called in and attempted to arrive at her home base within the required time. That incident and the corresponding investigation had been closed since January 30, 2021.

27. On March 9, 2021, Marshall received an email from Orlando stating that that Marshall's alleged social media policy violation concluded with a Letter of Conversation, simply stating that Marshall had spoken to her supervisors about the alleged violation and that she had been given a copy of JetBlue's social media policies. Marshall did not receive any disciplinary points for the alleged social media violations. The email also stated that JetBlue was still reviewing the no-show that Marshall received on January 29.

28. Marshall contacted Ligonde when Orlando brought up the no-show and Ligonde confirmed that this incident was not one that should have been reopened or otherwise investigated by upper management.

29. Interestingly, Marshall's original communications with Monaghan and Ligonde were no longer saved in her email account once Orlando's investigation began, despite JetBlue policy dictating that emails were only deleted after 90 days.

30. Marshall's January no-show incident was then being re-investigated nearly two months later despite a final determination being reached in January. Marshall was never told that the investigation was ongoing beyond the final determination she received in January.

31. On March 12, 2021, Marshall called Orlando to inquire as to the reason the no-show incident was being investigated again. Orlando simply responded that JetBlue can investigate anything they want.

32. Approximately two hours after this call, Orlando called Marshall to inform her that she was being suspended without pay pending the no-show investigation.

33. On March 22, 2021, Marshall was sent a letter stating that her employment with JetBlue was being separated for violation of company policy, effective March 18, 2021.

34. JetBlue has an established company policy pertaining to the termination of employees that requires an employee accumulate 12 points to warrant termination.

35. After the January no-show incident, Marshall had a total of just 5 points.

36. Marshall did not receive any points for her alleged social media policy violations, resulting in her having 5 total points at the time of her termination.

37.    On March 22, 2021, Marshall requested a post-separation review.

38.    On April 16, 2021, she received communication from JetBlue stating that her termination was being upheld.

39.    This investigation into the January no-show incident was re-opened immediately following the conclusion of the meeting pertaining to the racist Facebook post.

40.    The January no-show incident was mere pretext for JetBlue's retaliation against Marshall for her use of the internal grievance procedure to report a racist Facebook post.

41.    Marshall's use of JetBlue's internal grievance procedure to complain about a racist Facebook post constitutes protected activity.

42.    JetBlue re-investigated the January no-show incident for which a final determination was already reached, and ultimately terminated Marshall, in retaliation for engaging in that protected activity.

43.    As a result of JetBlue's retaliatory actions, Marshall experienced significant stress and anxiety.

44.    No legitimate, non-retaliatory reason exists for JetBlue to have re-investigated an incident for which a final determination was already reached, and to ultimately terminate Marshall.

<u>FIRST CAUSE OF ACTION</u>
RETALIATION UNDER TITLE VII

45.    Marshall repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

46.    At all relevant times, Marshall was an "employee" and "person" within the meaning of Title VII and JetBlue was an "employer."

47.    Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §§ 2000e-3(a).

48.    Marshall engaged in protected activity: utilizing JetBlue's internal grievance procedure to report a racist Facebook post to Crew Relations.

49.    JetBlue was aware of Marshall's participation in the protected activity; JetBlue took adverse action against Marshall; and a causal connection existed between Marshall's protected activity and the adverse action JetBlue took.

50.    No legitimate, non-retaliatory reasons exist for the adverse action JetBlue took against Marshall.

SECOND CAUSE OF ACTION
RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

51.    Marshall repeats every allegation of the preceding paragraph as if set forth in this cause of action.

52.    At all relevant times, Marshall was an "employee" and "person" within the meaning of the NYSHRL and JetBlue was an "employer."

53.    Under the NYSHRL "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer . . . to . . . discriminate against any person because [s]he has opposed any practices forbidden under this article or because [s]he has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e).

54.     Marshall engaged in protected activity, having opposed practices the NYSHRL forbids; JetBlue was aware of Marshall's participation in the protected activity; JetBlue took adverse action against Marshall; and a causal connection existed between Marshall's protected activity and the adverse action JetBlue took.

55.     No legitimate, non-retaliatory reasons exist for the adverse action JetBlue took against Marshall.

THIRD CAUSE OF ACTION
RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

56.     Marshall repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

57.     At all relevant times, Marshall was an "employee" and "person" within the meaning of the NYCHRL and JetBlue was an "employer."

58.     The NYCHRL prohibits employers from retaliating or discriminating in any manner against any person because such person has opposed any practice the NYCHRL forbids. N.Y.C. Admin. Code § 8-107(7).

59.     Under the NYCHRL, the retaliation or discrimination complained of need not result in an "ultimate action" with respect to the employee, or even in a materially adverse change in the employee's terms and conditions, provided that the retaliatory or discriminatory act(s) complained of would be reasonably likely to deter a person from engaging in protected activity. Restoration Act § 3 (amending N.Y.C. Admin. Code § 8-107(7)).

60.     Marshall took action to oppose JetBlue's discriminatory environment.

61.    JetBlue engaged in conduct that was reasonably likely to deter a person from engaging in such conduct, violating the NYCHRL's anti-retaliation provision. N.Y.C. Admin. Code § 8-107(7).

62.    A causal connection exists between Marshall's opposition and JetBlue's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Marshall respectfully requests that this Court grant the following relief:

a.    Accepts jurisdiction over this matter;

b.    Impanels and charges a jury with respect to the causes of action;

c.    Back pay, front pay, and all benefits along with pre and post judgment interest;

d.    Punitive, liquidated and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, and medical expenses in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination, harassment and retaliation are repulsive to legislative enactments;

e.    Attorneys' fees, costs and expenses to the fullest extent permitted by law; and

f.    Any other relief that this Court deems just and equitable.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Marshall demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
August 31, 2022

LIPSKY LOWE LLP


<u>s/ Christopher H. Lowe</u>
Christopher H. Lowe
Sara Isaacson
420 Lexington Avenue, Suite 1830
New York, New York 10170
Tel: 212.392.4772
Fax: 212.444.1030
chris@lipskylowe.com
sara@lipskylowe.com

# **EXHIBIT A**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website:  www.eeoc.gov

## CONCILIATION FAILURE AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/09/2022

**To:** Karli Marshall
C/O Lipsky Lowe LLP 420 Lexington Avenue, Suite 1830,
New York, NY 10170
Charge No: 520-2021-03627

EEOC Representative and email:     Madeline McGrath
Investigator
madeline.mcgrath@eeoc.gov

---

### CONCILIATION FAILURE OF CHARGE

To the person aggrieved: This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2021-03627.

On behalf of the Commission,

Digitally Signed By:Judy Keenan
06/09/2022

Judy Keenan
District Director

**Cc:**
Raymond J. Berti
raymond.berti@akerman.com

Christopher Lowe
Lipsky Lowe LLP
chris@lipskylowe.com

Alfons H D'Auria
LIPSKY LOWE LLP
Alfons@lipskylowe.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2021-03627 to the District Director at Judy Keenan, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.